## Commonwealth v. Moss.

*Summary conviction—Disorderly conduct—Attempt to speak and hold a meeting in violation of an order of the mayor.*

1. The record in a case of summary conviction for the violation of a city ordinance should show by whom the charge was made, whether in writing or orally, what facts were alleged as constituting the offence, and what ordinance was violated.

2. Disorderly conduct cannot be defined with such precision that it may always be readily determined whether particular conduct is or is not disorderly; but, generally, it is conduct that disturbs the quiet of a neighborhood and affects the public; it is a species of nuisance affecting the public peace and tranquility.

3. Where the mayor of a city had notified the defendant that he would not permit her to speak in the city, nor allow her to hold a public meeting as she had advertised, and, in disregard of these orders, the defendant went to the place advertised for the meeting and took the platform, where she was immediately arrested by policemen acting under the instructions of the mayor, and taken to City Hall and subsequently adjudged by the mayor guilty of disorderly conduct; and where, on appeal, the testimony showed that before her arrest there was no disorder in the room, and the only words spoken by the defendant were an order for the men to leave the room and a question whether "everybody was with her," and that, after her arrest, there was disorderly conduct by others, but it was not proved that the defendant engaged in this disorder, or was present, or incited, or provoked it: *Held*, that the defendant was not guilty of violating the ordinance prohibiting disorderly conduct.

Appeal by the defendant from summary conviction.    Q. S. York Co.

*W. Hensel Brown*, of the Lancaster County Bar, and *M. S. Niles*, for Commonwealth.

*James G. Glessner* and *George S. Love*, for defendant.

STOCK, J., March 7, 1927.—Defendant was arrested by the police of the City of York on a charge of "disorderly conduct," and was ordered by the

mayor to be held without bail. Defendant appealed to this court by writ of *habeas corpus* and was released promptly by us on bail. In the *habeas corpus* proceeding this court had no jurisdiction to inquire into the merits of the case (Com. v. Norton, 8 S. & R. 72; Com. v. Keeper of Jail, 26 Pa. 279; Dow's Case, 18 Pa. 37; Com. v. Ransley, 26 Dist. R. 1035; Com. v. Keeper of County Prison, 26 Dist. R. 511), and remanded the defendant back to the mayor for a hearing. A hearing having been had and sentence imposed, defendant applied to this court for leave to take an appeal, setting forth in a petition her reasons therefor. This court passed upon the merits of that petition and allowed an appeal in accordance with section 14, article v, of the Constitution of Pennsylvania: Com. v. Johnston, 16 W. N. C. 349; Com. v. McCann, 174 Pa. 19; Com. v. Eichenberg, 140 Pa. 158; Com. v. Menjou, 174 Pa. 25.

The case now comes before this court to be heard and tried upon its merits *de novo* and without a jury: Com. v. Waldman, 140 Pa. 89; Thompson v. Preston, 5 Pa. Superior Ct. 154; Com. v. Simpson, 16 Dist. R. 416, 33 Pa. C. C. Reps. 188.

The record sent up on this appeal does not show by whom the charge was made, whether by written complaint or orally, what facts were alleged as constituting the offence, nor what ordinance was violated. These are requisites in the record of a case of summary conviction (Com. v. Divoskein, 49 Pa. Superior Ct. 614), and on *certiorari* would have caused the sentence of the mayor to be reversed: Com. v. Nesbit, 34 Pa. 398; Com. v. Borden, 61 Pa. 272; Reid v. Wood, 102 Pa. 312.

The record shows "Summary proceedings for the violation of city ordinance," and on the margin, "Charge, disorderly conduct." At the time of the hearing the Commonwealth was permitted, over the objection of the defendant, to stipulate a formal charge, which was in the following words: "It is stipulated by counsel for Commonwealth that Neva P. Miller Moss did, on the 13th day of January, 1927, in the City of York, Pennsylvania, violate an ordinance of the said City of York, which ordinance was passed by common council on March 4, 1901, and approved March 13, 1901, providing and directing the arrest and punishment of vagrants and any persons found begging or drunk or disorderly or committing any breach of the peace within the limits of the City of York." Here follows in full the ordinance above cited.

The court then defined the issue: Was defendant guilty of disorderly conduct? and indicated that the Commonwealth might sustain this charge either by showing disorderly conduct on the part of the defendant, or that she by word or action incited or provoked others to disorderly conduct.

The facts proven at this hearing are as follows: The Mayor of the City of York notified defendant that he would not permit her to talk in the City of York on the day she had advertised to talk, and would not allow her to hold a public meeting here which she advertised to hold. On Jan. 13, 1927, defendant, against the orders of the mayor, proceeded to hold a meeting. The mayor, being informed of that fact, ordered the police to go to the Knights of Malta Hall and if defendant was holding a public meeting to place her under arrest on a disorderly conduct charge. After the officers arrived at the Malta Temple, defendant took the platform and was immediately placed under arrest and taken to City Hall. The officers testified that, before her arrest, there was no disorder in the room, and the only words which defendant is testified to have uttered at any time, either before or after her arrest, were that she ordered all the men out of the room (the meeting being for ladies only), and "asked if everybody was with her."

While defendant was detained at City Hall, a number of persons collected on the public street outside of City Hall, which the mayor characterized as a disorderly crowd. While the facts proven in the case show disorderly conduct by others, it was not proven, or attempted to be proven, that defendant engaged in this disorder, or was present, or incited, or provoked it. The charge of disorderly conduct resulting in this first arrest remains undisposed of by the mayor.

After defendant's release on bail from this arrest, she seems to have left City Hall and proceeded on East Market Street as far as Graybill's store. Whether she ever returned to Malta Temple; whether she ever resumed her speech, or attended any meeting at that or any other place, was not proven nor offered to be proven. What she did after that; what she was doing at the time of her second arrest, under what circumstances the second arrest was made, are all facts left to the imagination.

After she had been arrested a second time and after she had been brought to City Hall, it was shown that certain persons on the outside of City Hall created disorder. At this time defendant was under arrest, inside City Hall, and, as the mayor frankly states, was creating no disorder nor attempting to do so.

The Commonwealth refrained from calling the public officers who made the second arrest, although at least one of them was present in court at the hearing of this case, and two of them had testified in the former hearing in *habeas corpus* proceedings. It was stated to the court that one of them was sick, but no move was made to secure his testimony in this proceeding.

The court declines to go outside the record of this case.

This second arrest resulted in a hearing on a charge of disorderly conduct, and from the sentence imposed therein this appeal is taken.

"Disorderly conduct is one of rather nebulous and uncertain meaning, since it has been variously defined in different jurisdictions, and no definition of such precision is generally accepted as that it may always be readily determined whether particular conduct is or is not disorderly. One who commits a breach of the peace is, of course, guilty of disorderly conduct, but not all disorderly conduct is necessarily a breach of the peace, as where it is merely calculated to disturb or annoy: Garvin *v*. Mayor and City of Waynesboro, 84 S. E. Repr. 90; Mt. Sterling *v*. Holly, 57 S. W. Repr. 491. It has been held that noises, exclamations and outcries in the public street, by which people are drawn together and the highway obstructed, constitute disorderly conduct:" Com. *v*. Spratt, 14 Phila. 365. Another Pennsylvania judge has held that calling a non-union workman a scab during a period of public excitement is disorderly conduct: Com. *v*. Redshaw, 2 Dist. R. 96; that riotously raising a liberty pole in a public place is disorderly: Com. *v*. Morrison, Addison, 274; exhibiting an effigy calculated to provoke a breach of the peace: Com. *v*. Haines, 6 Penna. L. J. 239; and solicitation by a street-walker is disorderly and constitutes her a disorderly street-walker: Com. *v*. Superintendent House of Correction, 38 Pa. C. C. Reps. 188. "In a broad sense, disorderly conduct is any conduct that an orderly, well-disposed and law-abiding citizen would not engage in, but, in the parlance of criminal law, it is conduct that disturbs the quiet of a neighborhood and affects the public; it is a species of nuisance affecting the public peace and tranquility:" Com. *v*. Moore, 12 York Leg. Record, 115. To convict a defendant of being a disorderly person, it is necessary to show that defendant committed a disorder: Com. *v*. Superintendent of House of Correction, 22 Dist. R. 413.

Commonwealth v. Moss.

The evidence in this case fails to show that defendant committed a disorder, or that she said or did anything which provoked or incited others to disorder. Although counsel for the Commonwealth stated that defendant had said things in her speech at the Malta Temple which incited others to disorder, they failed to produce witnesses to prove these statements. The few words she is said to have uttered before her first arrest—"asked if everybody was with her"—are too vague and indefinite to draw a conclusion that she was inciting her audience to follow her to City Hall and there indulge in a riot. And these words were spoken before her first arrest, and are, doubtless, included in the first charge for disorderly conduct, which is still pending before the mayor.

The burden of proving defendant guilty, as in all criminal cases, is upon the Commonwealth. Defendant must be proven guilty beyond a reasonable doubt. The Commonwealth's proof does not measure up to this requirement.

And now, to wit, March 7, 1927, this appeal came on to be heard, and, after argument by counsel and upon due consideration of all the evidence in the case, it is adjudged, ordered and decreed that the defendant, Neva P. Miller Moss, is not guilty of the charge of disorderly conduct, in violation of an ordinance of the City of York, entitled "An ordinance directing the arrest and punishment of vagrants and all persons found begging or drunk or disorderly or committing any breach of the peace within the limits of the City of York," approved March 12, 1901; and it is further ordered that the defendant, Neva P. Miller Moss, be and is hereby discharged.

From Richard E. Cochran, York, Pa.